IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PBR SALES, LLC<br><br>               Plaintiff,<br><br>       v.<br><br>E.T. OIL, INC., EDWIN TANGLAO, as an individual and as agent of E.T. OIL, INC, JOSEPH M. HOATS, as an individual and agent of E.T. OIL, INC, JOHN DOES I-X, fictional defendants whose identities are not unknown, XYZ CORPORATIONS, fictitious corporations or entities whose identities are unknown<br><br>            Defendants. | HON.<br><br>Civil Action No.:<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff, PBR SALES, LLC, by its attorneys, Lettera & Mosiello, LLP, alleges for its complaint upon information and belief as follows:

## INTRODUCTION

1. Plaintiff is a legitimate business that was intentionally defrauded of approximately $1,210,000 by defendants. Defendants conspired to nefariously gain the confidence and trust of the Plaintiff by creating compelling background stories and fictional expertise. These material misrepresentations were made by defendants in order to convince plaintiff to enter into a purchase agreement and subsequently wire funds to defendants in return for Type II Diesel fuel. Funds were wired to defendant but Type II Diesel fuel was never delivered to plaintiff. Without judicial intervention, it is a near certainty that plaintiff will never again see its money.

1

## JURISDICTION AND VENUE

2. The jurisdiction is appropriately laid in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1332 (a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different States.

3. The venue is appropriately laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(ab)(1), (2) because Plaintiff has its principal place of business in this district and a substantial part of the events or omissions giving rise to the claim occurred within the State of New York.

## PARTIES

4. Plaintiff, PBR Sales, LLC, ("PBR" or "Plaintiff") is a Limited Liability Company, originally registered in Delaware, with its headquarters in the State of New York. Pratap Sapra, ("Mr. Sapra") is the managing member of PBR, and as such has first-knowledge of the transactions alleged herein.

5. Plaintiff PBR is in the business of purchasing and re-selling fuel and other commodities.

6. Defendant E.T. Oil, Inc., ("E.T. Oil") is a California Corporation formed on or around January 21, 2014. A true and correct copy of E.T. Oil's Articles of Incorporation are attached hereto as **Exhibit "A"**.

7. Defendant Edwin Tanglao ("Tanglao" or "Defendant Tanglao") is Founder, Chief Executive Officer and President of E.T. Oil.

8. Defendant Joseph Hoats, Esquire ("Hoats" or "Defendant Hoats"), is attorney and counsel for E.T. Oil, and/or Tanglao, and is admitted in California[1].

9. Defendant John Does I-X are fictitious entities and/or persons whose identities are presently unknown to Plaintiff but who are liable to the Plaintiff for any of the acts and causes of action described in this Complaint.

10. Defendant Corporations XYZ are fictitious corporations or entities whose identities are presently unknown to Plaintiff, but who are liable to Plaintiff for any of the acts and causes of action described in this Complaint.

## FACTS COMMON TO ALL COUNTS

11. On or about January 15, 2017, Plaintiff was introduced to Defendant Tanglao and E.T. Oil by Rick Brazelton ("Brazelton") and Walter Littlefield ("Littlefield"), both of whom were known to Plaintiff from the oil and gas industry.

12. Between January 15, 2017 and January 21, 2017, Defendant Tanglao and Defendant E.T. Oil offered a multitude of oil or fuel products to PBR including, but not limited to, "Black Oil," Ultra Low Sulfur Diesel ("ULSD") and Diesel Type II.

13. Tanglao worked to gain Plaintiff's trust over the course of several phone calls by telling Plaintiff, among other things, that Tanglao served in the United States Navy as a Navigator.

14. This was a lie, Tanglao did not serve in the U.S. Navy or with any other military branch of the United States.

15. Tanglao also told Plaintiff that he has been incredibly successful in the oil business in part because it was a family tradition. In further support of this representation, Tanglao

---

[1] Mr. Hoats was disbarred from the practice of law in Tennesee for a period of seven years from April 1983 until April 1991.

urged Plaintiff to look at his biography page on the company website. A true and correct copy of a screen shot of Defendant's biography from his website is attached hereto as **Exhibit "B".**

16. The biography states in part:

> In the year 1999, Edwin decided to retire from the Navy and start working for his father, Adrian J. Atwill, the owner of ML-Oil Corp. Working for this successful company, Edwin further developed his knowledge to work and communicate at the highest level.  He was assigned in the Sales and Purchase Department and in a few years, this position made him a successful international commodity trader.  Edwin managed ML- Oil Corp's major accounts such as Exxon, Shell/Shell Trading Account International, Greenfields Mine International, Green Valley Mine and Pipeline, Met Electric Mine Co., Forest Paint International, Henry Pain, and other major global companies, Sometime later, after his father died due to illness, Edwin ran ML-Oil Corp. Then in the first week of March, 2006, with his brother's encouragement, Edwin started his own company, E.T. Oil Company.  E.T. Oil was then able to acquire its own licenses and permits and this allowed the company to start handling major accounts...[2]

17. Upon information and belief, the biography of Tanglao on the E.T. Oil website contains several misrepresentations.

18. Not only is ML Oil is a fictitious entity that never existed, but Defendant Tanglao greatly misrepresented his family history to Plaintiff.

19. However, at the time, Plaintiff had no reason to not believe Tanglao's representations about his family, career, business experiences and success.

20. As a result of which, Plaintiff relied upon Tanglao's representations when demining whether or not to do business with Tanglao and E.T. Oil.

21. On or about January 21, 2017, Defendant Tanglao and Defendant E.T. Oil offered PBR "Black Oil."

---

[2] www.E.T.oilcompany.com/?page_id=15756

22. In furtherance of said offer, on or about January 21, 2017, Plaintiff received an email from Defendant Joseph Hoats. This email included an attached letter signed by Tanglao, granting PBR permission to verify the black oil, which was being held by Defendants in tanks located at a Kinder Morgan Inc. Terminal in Galena Park, Texas ("KMT").

23. For various reasons, plaintiff rejected the afore-referenced offer to purchase Black Oil.

24. Shortly thereafter, on or about February 13, 2017, Defendant Tanglao approached PBR with a second offer. Tanglao stated that E.T. Oil could supply Diesel Type II Fuel "off the rack[3]."

25. Plaintiff was more interested in this February 13, 2017 offer, but not so much as to agree to purchase at that time.

26. In an additional effort to convince Plaintiff to purchase the Diesel Type II Fuel, on or about February 15, 2017, Defendant Tanglao introduced Mr. Sapra by telephone to someone claiming to be Karl Wagner ("Wagner"), a customer service supervisor at KMT.

27. Now, upon information and belief, the individual that Tanglao introduced to Plaintiff was not associated with KMT. However, relying on such representations at the time, PBR afforded much weight to speaking with Wagner, a customer supervisor at KMT, when determining whether or not to enter into a purchase agreement with Defendant Tanglao and E.T. Oil.

28. On or about February 15, 2017, in a continuing attempt to induce Plaintiff to agree to purchase fuel, Defendant Tanglao requested details of PBR's trucking carriers. Upon information and belief this was done in order to create the perception of readily available Diesel Type II, which could be quickly delivered upon ordering.

---

[3] The term "off the rack" means fuel that accessible directly from a fuel terminal and loaded directly into tanker trucks.

29. Sensing Mr. Sapra's hesitation, in yet a further attempt to convince PBR to enter into an agreement, on or about February 16, 2017, Tanglao proposed that PBR and E.T. Oil enter into a 'trial contract', which Tanglao assured was a 'slam dunk' and after which, PBR would have ongoing business with E.T. Oil.

30. The general terms of the trial agreement (the "February 16, 2017 Offer" or the "February 16, 2017 Agreement") were as follows:

   a) E.T. Oil would supply a total of 1,250,000 gallons of Diesel Type II to PBR at a total cost of $1,250,000;

   b) The Diesel Type II would be released from KMT, where the fuel was allegedly stored, and delivered to PBR at a rate of 250,000 gallons per day for five (5) consecutive days;

   c) PBR would make an initial deposit of $750,000 by wire to E.T. Oil;

   d) Within forty-eight hours of receipt of PBR's initial deposit ($750,000), E.T. would begin delivery of the Diesel Type II by release codes to PBR[4].

   e) The Balance of $500,000 was to be paid at the commencement of delivery.

31. PBR, relying on all prior representations made by defendant(s), finally agreed and accepted the February 16, 2017 Offer.

32. Once PBR accepted the terms of the February 16, 2017 Offer with E.T. Oil, PBR arranged for onward sale of the Diesel Type II to "PBR Customer 1."

33. PBR Customer 1 contacted Plaintiff to seek additional information about the process for picking up the fuel. PBR Customer 1 expressed concerns about trucking pick-up wait

---

[4]Once the fuel supplier confirms fuel in tanks, a "release code" is generated and given to the purchaser. The release code is given to the trucking company and the release code unlocks the fuel to be loaded into the tanker truck.

times at KMT based on prior experience at the facility. Plaintiff immediately raised the concerns with Tanglao.

34. In response to the concern, Tanglao claimed to Plaintiff that he personally knew PBR Customer 1 and had previously worked with PBR Customer 1. Tanglao then asked to speak with the head of Logistics for PBR Customer 1 in order to resolve the concerns.

35. In an effort to quash any concerns:

    a. PBR Customer 1 requested to pick up the Diesel Type II fuel from an alternative location on the west side of KMT.  Tanglao agreed to said request.

    b. PBR Customer 1 requested to meet Tanglao at KMT in order to facilitate an inspection of the goods before they were released to PBR Customer 1.Tanglao also agreed to this request.

36. However, despite Tanglao agreeing to PBR Customer 1's foregoing requests to pick up Diesel Type II from the West side of KMT, and to meet with the Head of Logistics at KMT, Tanglao never scheduled or held the meetings.

37. Upon information and belief, these meetings were purposefully never scheduled by Tanglao because the fuel was never at KMT.

38. Later the same day that Plaintiff and Defendants consummated the February 16, 2017 Agreement, Tanglao informed Mr. Sapra that the Diesel Type II would be coming from ExxonMobil Atlanta Terminal. Tanglao claimed that the Diesel Type II was being loaded into vessels and documentation would be provided within 2-3 days.

39. This was the first time plaintiff learned that the fuel was being shipped from Atlanta and was not already at KMT, despite prior representations to the contrary.

40. Nonetheless, on February 21, 2017, in good faith and in performance of its obligation under the terms of the February 16, 2017 Agreement, Plaintiff wired $750,000 to E.T. Oil. A true and correct receipt of the February 21, 2017 wire is annexed hereto as **Exhibit "C"**.

41. Pursuant to the terms of the February 16, 2017 Agreement, delivery of Diesel Type II fuel was to commence on or before February 24, 2017.

42. However, delivery did not commence as required under the terms of the February 16, 2017 Agreement.

43. Furthermore, almost immediately after Plaintiff wired funds to E.T. Oil, Tanglao offered to sell Plaintiff an additional 600,000 gallons of fuel. Plaintiff rejected the offer.

44. Thereafter, on or about March 1, 2017, Tanglao advised Plaintiff that an additional $200,000.00 had to be wired to E.T. Oil in order to move the Diesel Type II fuel to the west side of KMT. Tanglao referred to the additional fee as a storage payment and said the fuel could not be released unless the storage payment was paid by Plaintiff.

45. The storage payment was not mentioned prior to March 1, 2017, and was not a term of the February 16, 2017 Agreement.

46. Unfortunately, still giving defendants the benefit of the doubt, on or about March 3, 2017, PBR wired an additional $200,000 to E.T. Oil to satisfy the new storage payment demand. A true and correct copy of the receipt from the March 3, 2017 wire is annexed hereto as **Exhibit "D"**.

47. As of March 3, 2017 PBR had paid Tanglao and E.T. Oil $950,000.00.

48. On or about March 3, 2017, after having received $950,000.00 from Plaintiff, Tanglao again offered to sell additional fuel including Ultra Low Sulfur Diesel to Plaintiff.

49. Plaintiff declined to purchase additional product from E.T. Oil and was focused on obtaining the delivery of product already purchased under contract.

50. On or about March 4, 2017, and after confirming receipt of Plaintiff's $200,000 wire payment, Tanglao told Plaintiff the Type II Diesel fuel was on its way from ExxonMobil Atlanta.

51. On or about March 4, 2017, Tanglao sent Mr. Sapra a text message with a photo showing Tanglao standing in front of Oil tanks, with the text "That's Tank 101 102 103 full of oil". A true and correct copy of the March 4, 2017 text message is annexed hereto as **Exhibit "E"**.

52. On or about March 4, 2017, Tanglao sent a text message with a photo attached showing another man standing in front of oil tanks with the text "That is Atty joe". A true and correct copy of the March 4, 2017 text message with "Atty Joe" is annexed hereto as **Exhibit "F"**.

53. Upon information and belief "atty joe" is Defendant Joseph M. Hoats, Esq.

54. Upon information and belief Tanglao sent the text messages in a continuing attempt to convince Plaintiff: 1) that the February 16, 2017 Agreement was a legitimate transaction; and 2) to purchase additional products from E.T. Oil.

55. On or about March 9, 2017, Plaintiff received an email from Mr. Hoats containing a letter Hoats sent PBR drafted on E.T. Oil Letterhead entitled "Conveyance and Transfer of Ownership". Said letter purported to convey 4,717,973 gallons of black oil located at KMT to PBR.

56. However, *PBR* never contracted to purchase black oil.

57. On information and belief, the March 9 letter was sent to Plaintiff to demonstrate that Defendant actually had product and/or to see if Plaintiff would accept black oil in place of the due Diesel Type II Fuel.

58. Plaintiff did not want to accept alternative product in place of the Diesel Type II Fuel it contracted to purchase.

59. On or about March 09, 2017, in good faith and in performance of its obligation under the terms of the contract, and despite the fact that delivery had not commenced, PBR wired the balance due in final payment to E.T. Oil in the amount of $500,000.00. A true and correct copy of the receipt of the March 09, 2017 wire is annexed hereto as **Exhibit "G"**.

60. As of March 10, 2017 Plaintiff had wired 1,450,000.00 to E.T. Oil.

61. As of March 10, 2017 Tanglao and E.T. Oil had not delivered any fuel to Plaintiff.

62. Pursuant to the terms of the contract, the first delivery of fuel was to occur on or before February 24, 2017.

63. Upon information and belief, Tanglao and E.T. Oil had no intention of delivering any fuel to Plaintiff.

64. On or about March 14, 2017, Tanglao created or helped to create at least two (2) separate business entities registered in the name of Danna Hoeser Tanglao. The known companies are Soarhead, Inc., and Baton of Lord, LLC.

65. Upon information and belief, Danna Hoeser Tanglao is the spouse of Edwin Tanglao.

66. Upon information and belief, the companies registered in the name of Danna Hoeser Tanglao were formed in an attempt to fraudulently transfer Plaintiff's money paid to Tanglao and E.T. Oil.

67. On or about March 20, 2017, PBR demanded that Tanglao and E.T. Oil either immediately deliver the contracted amounts of Diesel Type II to PBR or return all payments received[5].

68. Shortly thereafter, on or before March 21, 2017, the Defendants arranged a transfer of approximately $138,313.83 of the money Plaintiff paid to E.T. Oil for performance under the contract, to an account captioned E.T. Petroleum at Wells Fargo Bank, NA.

69. Between March 21, 2017, and March 30, 2017, Tanglao and Hoats made multiple telephone calls to Mr. Sapra, each time promising delivery of the ordered quantities of Diesel Type II. During these conversations Tanglao and Hoats made excuse after excuse for non-performance, including the representation that ExxonMobil was 'working on the issue' and delivery would be imminent.

70. Mr. Sapra and PBR continued to demand that E.T. Oil perform under the terms of the February 16, 2017 Agreement and deliver the Diesel Type II, or return $1.45 Million Dollars that PBR had paid to E.T. Oil.

71. On or about March 30, 2017, Tanglao sent an email to PBR with the heading "Portal/Exxon Message". Said email purported to evidence the fact that ExxonMobil was working with E.T. Oil and/or Portal Energy to deliver "bulk unbranded fuels" to Portal Energy and ultimately, E.T. Oil.

72. State email reads in pertinent part:

> "Portal is working diligently to open the rack accounts at the required terminals within the refiner's time frames and limitations." The email was signed "Sincerely, John Ferguson CEO/Founder Portal Energy/Exxon".

---

[5] A summary of the payments made by PBR include two (2) contractual payments of $750,000 (remitted on 2/20/17, **Exhibit C**) and $500,000 (remitted on 3/10/17, **Exhibit G**), and one (1) "storage payment" of $200,000 (remitted on 3/3/17, **Exhibit D**). All payments by PBR to E.T. Oil total $1,450,000.

73. On or about April 4, 2017, Tanglao and E.T. Oil notified PBR that Portal Energy would be supplying the Diesel Type II rather than ExxonMobil as was repeatedly promised.

74. On or about April 5, 2017, Tanglao, in a further attempt to prove his credibility as a professional in the industry, forwarded an email purporting to be from Shell Oil claiming that E.T. Oil was a Shell Oil Account Holder.

75. Despite the email from Shell Oil, PBR continued to make repeated demands for performance or a refund. Then, on or about April 18, 2017, E.T. Oil wired $240,000 to PBR, leaving a balance due PBR of $1,210,000.

76. On or about April 19, 2017, in a continuing attempt string along Plaintiff, Tanglao forwarded an email to Mr. Sapra, purporting to be from ExxonMobil. The email was signed by "Gabrielle Steffen Vorst, International Products Trader, ExxonMobil Refining and Supply".

77. No employee of ExxonMobil named Gabrielle Steffen Vorst has heard of E.T. Oil or Edwin Tanglao. The email is a forgery. See the sworn to Affidavit of Gabrielle Steffen Vorst annexed hereto as **Exhibit "H".**

78. On or about April 27, 2017, Mr. Sapra sent Tanglao an email that detailed the transactions to date and demanded a return of the balance due PBR for Defendants failure to perform pursuant to terms of the February 16, 2017 Agreement.

79. On or about May 3, 2017, Hoats telephoned Mr. Sapra, to introduce him to a gentleman claiming to be David Macias, CEO of Sunshine Energy. After Hoats made the introduction, Hoats got off the call.

80. During the May 3, 2017 phone call, David Macias told Plaintiff that Sunshine Energy were partners with Portal Energy. Mr. Macias additionally told Mr. Sapra that E.T. Oil had sent $720,000 of the proceeds from PBR's wire to Portal Energy. Macias stated that both Tanglao and Hoats had confirmed that the $720,000 received by Portal was proceeds from PBR's initial wire of $750,000.

81. Upon information and belief, Hoats set up the phone call with Mr. Mancias to inform Plaintiff that E.T. Oil no longer had Plaintiff's cash on hand to return to PBR.

82. On or about May 4, 2017, Mr. Sapra was informed by Rick Brazelton (one of the people that introduced PBR to E.T. OIL, see ¶ 11, *supra*) that a check dated March 21, 2017, was drawn on a Wells Fargo Bank Account titled E.T. Petroleum, in the amount of $138,313.83, and payable to an individual named Miriam Busby. Mr. Brazelton also informed Mr. Sapra that the check was negotiated on the same day at Arrowhead Credit Union in San Bernardino, California.

83. Upon information and belief, E.T. Petroleum is a business registered in the State of Texas.

84. Upon information and belief, the Registered Agent for E.T. Petroleum is Danna Hoeser Tanglao, the spouse of Defendant Tanglao.

85. Later on May 4, 2017, Mr. Sapra telephoned Tanglao to inquire about the $138,313.83 funds paid by E.T. Petroleum to Miriam Busby. Tanglao admitted that the funds were proceeds from the PBR transaction. During the same conversation, Tanglao claimed that Hoats had drawn the funds from E.T. Petroleum's account in the amount of $138,313.83, without Tanglao's knowledge or permission.

86. As of May 4, 2017 Plaintiff had been advised that E.T. Oil and Tanglao had used Plaintiff's money to pay Miriam Busby, and Portal Engergy.

87. On May 11, 2017, Mr. Sapra received a telephone call from Tanglao offering a new reason why Plaintiff's money had not been returned.

88. During the May 11, 2017 phone call Tanglao spoke erratically and had trouble maintaining his chain of thought. Tanglao claimed PBR had not received its money back because Tanglao had been "detained" by the FBI and IRS. At which time, Tanglao accused Mr. Sapra of having "ratted" him to law enforcement.  Despite which, Tanglao again assured Plaintiff that E.T. Oil would pay PBR back in full, ending the call by saying "it's all good."

89. On or about May 12, 2017, and still not having received the promised refund of $1.21 Million, Plaintiff received several emails from Tanglao. Upon information and belief said emails were sent for the purpose of convincing Plaintiff that Tanglao and E.T. Oil would soon complete transactions which would enable Tanglao and E.T. Oil to return PBR's money. The emails included a) a PDF purporting to be from BP (British Petroleum) titled "ULSD 30 million from BP"; b) a PDF purporting to be an invoice titled "Scan_0003" (**Exhibit "I"** annexed hereto); c) a PDF purporting to be from Citibank Philippines, issued April 6, 2017, titled "Scan_0004" (**Exhibit "J"** annexed hereto).

90. After sending the May 12, 2017 emails, Tanglao telephoned Plaintiff repeatedly assuring Plaintiff that he and E.T. Oil would soon be in a position to return PBR's $1.21 Million.

91. On or about May 17, 2017, and having not received any of the outstanding $1.21 million, Plaintiff sent Tanglao an email saying that PBR was "not interested in anymore excuses."

14

Plaintiff demanded that Tanglao and E.T. Oil immediately return the balance due PBR of $1.21 Million.

92. Shortly thereafter, on or about May 17, 2017, Tanglao spoke to Plaintiff by phone and promised to get a wire to PBR by the end of the day. The funds were never wired.

93. On or about May 18, 2017, Tanglao telephoned Mr. Sapra saying that he had "good news" and offered alternative product to PBR instead of the promised return of Plaintiff's money or the delivery of the contracted for Type II Diesel fuel. Once again, Plaintiff declined the offer to accept alternative goods, as Plaintiff no longer wished to do business with Defendants.

94. On or about May 18, 2017, and having not received the previous day's promised wire returning PBR's $1.21 Million, Mr. Sapra emailed Tanglao and E.T. Oil, again demanding payment.

95. On or about May 18, 2017, acknowledging receipt of Mr. Sapra's afore-referenced May 18, 2017 email, Tanglao telephoned Plaintiff and promised that PBR would receive by wire in the sum of $1.21 Million the following day (May 19, 2017), or at the latest by Tuesday (May 23, 2017). Tanglao also promised that it would compensate PBR for interest and lost profits in addition to the payment of $1.21 Million.

96. On the same day (May 18, 2017), Mr. Sapra memorialized the conversation in another email to Tanglao.

97. On May 23, 2017, after the close of business, Mr. Sapra received a telephone call from Tanglao. During the conversation Tanglao again spoke erratically.    During the conversation, Tanglao stated:

a) He [Tanglao] was under the protection of the FBI and would be unable to communicate again until Wednesday, May 31, 2017;

b) He again acknowledged that he owed Plaintiff, and would make PBR whole;

c) That he would personally deliver the money to Plaintiff in New York.

98. During the May 23 conversation, Plaintiff asked Tanglao when PBR would get its money and be made whole. In an attempt to intimidate or threaten Plaintiff, Tanglao said "I know where you live with your family."

99. Plaintiff believes Tanglao was threatening the safety and well-being of his family in an effort to get Plaintiff to stop demanding a return of money.

100. Upon information and belief, Tanglao and Hoats engaged in a scheme to defraud PBR, by fabricating documents, concealing material facts, and making false representations to PBR.

101. On information and belief, the Defendants used Plaintiffs money to pay for various personal expenses, including, but not limited to, new cars, jewelry, and firearms.

102. On information and belief, Tanglao and Hoats have rendered E.T. Oil insolvent.

103. As of today, July 5, 2017, PBR has not received the promised repayment of $1.21 Million ($1,210,000.00) or the Type II Diesel for which they paid.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(against E.T. Oil and Tanglao)**

104. Plaintiff repeats, reiterates and re-alleges all prior paragraphs and allegations of this Complaint with the same cause and effect as if set forth more fully herein.

105. On or about February 16, 2017 Tanglao and his company E.T. Oil offered to sell Type II Diesel fuel to Plaintiff.

106.     Plaintiff accepted the terms of the February 16, 2017 Offer.

107.     In accordance with the terms of the February 16, 2017 Agreement, Plaintiff paid E.T. Oil and its CEO, Tanglao $750,000.00 on February 21, 2017.

108.     As such, the offer, acceptance and consideration formed a contract between Plaintiff, E.T. Oil and its CEO, Tanglao.

109.     Plaintiff continued to comply with all contract terms by wiring additional funds to Defendant's bank account(s).

110.     E.T. Oil and Tanglao breached the February 16, 2017 Agreement by failing and/or refusing to deliver the Type II Diesel fuel despite Plaintiff's performance.

111.     E.T. Oil and Tanglao have furthered the breach of contract by failing and refusing to return Plaintiff's money.

112.     As of July 5, 2017 E.T. Oil and Tanglao continue to wrongfully hold $1,210,000.00 of Plaintiff's money.

113.     Plaintiff has made numerous attempts to obtain delivery of the goods and/or a return of its money by exchanging phone calls, emails and text messages with E.T. Oil and Tanglao.

114.     Tanglao and E.T. Oil have repeatedly refused to comply with said terms of the Agreement and are in breach of same.

115.     The conduct set forth in this Complaint, and this cause of action, is not exhaustive.  It is anticipated that additional wrongful conduct will be uncovered in discovery.

116.     As a direct and proximate result of the Tanglao and E.T. Oil's continuing breach of contract, Plaintiff has been damaged.  Plaintiff's damages include, but are not limited

to, loss of income, deprivation of the use of Plaintiff's money, and loss of business opportunities.

117.     Plaintiff is entitled to recovery of damages resulting from the wrongful conduct of E.T. Oil and its owner Tanglao in amount to be determined at trial, but in no event less than $1,210,000.00, plus interest and consequential damages.

### SECOND CAUSE OF ACTION
### BREACH OF COVENENT OF GOOD FAITH AND FAIR DEALING
### (against E.T. Oil)

118.     Plaintiff repeats, reiterates and re-alleges all prior paragraphs and allegations of this Complaint with the same force and effect as if set forth more fully herein.

119.     In New York, and in California, every contract, in addition to its express terms, contains an implied covenant of good faith and fair dealing.

120.     In February 2017, Plaintiff PBR and Defendant E.T. Oil entered into an enforceable contract.

121.     The contract between Plaintiff and E.T. Oil is covered by an implied covenant of good faith and fair dealing.

122.     Plaintiff, in good faith, performed under the terms of the contract by paying Defendant E.T. Oil in full, for fuel it contracted to purchase.

123.     All conditions required for E.T. Oil to perform under the contract were met.

124.     E.T. Oil unfairly interfered with Plaintiff's right to receive the benefits of the contract.

125.     Plaintiff PBR repeatedly requested delivery of the fuel it contracted to purchase from Defendant E.T. Oil.

126.     Plaintiff PBR repeatedly requested that E.T. Oil return Plaintiff's money.

127.     Plaintiff repeatedly made known to Defendant E.T. Oil that Plaintiff was incurring additional expenses due to Defendants' failure to perform under the terms of the contract.

128.     The expenses that Plaintiff incurred were not foreseeable at the time that the Plaintiff and E.T. Oil entered into the contract.

129.     E.T. Oil has failed to deliver the fuel that Plaintiff contracted to purchase.

130.     E.T. Oil has not returned the balance of the funds that are owed to Plaintiff.

131.     E.T. Oil has offered no reasonable explanation for its conduct when asked by Plaintiff, and E.T. Oil has offered no reasonable resolution to make Plaintiff whole.

132.     Defendant E.T. Oil's failure to perform under the express terms of the contract has resulted in addition harm to Plaintiff.

133.     More than ninety (90) days have passed since E.T. Oil violated the covenant of good faith and fair dealing.

134.     The conduct set forth in this Complaint is non exhaustive and is intended to place the Defendants on notice of their wrongdoing.  It is anticipated that additional wrongful conduct will be uncovered in discovery.

135.     Defendant E.T. Oil has failed to act in good faith and deal fairly with Plaintiff.

136.     As a result of Defendants conduct, Plaintiff PBR has been damaged in an amount to be determined at trial, but in no event less than $1,210,000.00, plus interest and consequential damages.

**THIRD CAUSE OF ACTION**
**FRAUD**
**(against E.T. Oil, Tanglao, Hoats)**

137.　　Plaintiff repeats, reiterates and re-alleges all prior paragraphs and allegations of this Complaint with the same force and effect as if set forth more fully herin.

138.　　Acting on his own behalf and on behalf of E.T. Oil, Tanglao made false representations to Plaintiff in an attempt to induce Plaintiff to pay money to E.T. Oil and its CEO, Tanglao.

139.　　The false representations outlined in the fact section of this Complaint include, but are not limited to, the following:

    i.　E.T. Oil and its CEO, Tanglao falsely represented to Plaintiff there experience and credentials in the oil industry in order to induce Plainitffs to enter into agreement with them.

    ii.　E.T. Oil and Tanglao misrepresented that it had, on hand, product readily available for purchase and it would deliver 250,000 gallons of Diesel Type II fuel to Plaintiff on five consecutive days beginning within forty eight hours of Plaintiff paying E.T. Oil $750,000.00.

    iii.　E.T. Oil and its CEO, Tanglao falsely represented that the Type II Diesel fuel was being stored at KMT.

    iv.　E.T. Oil and its CEO, Tanglao later falsely represented that the Type II Diesel fuel was being shipped to KMT from Atlanta Georgia.

    v.　E.T. Oil and its CEO, Tanglao falsely represented that the Type II Diesel fuel was from ExxonMobil.

    vi.　E.T. Oil and its CEO, Tanglao falsely represented that Plaintiff had to pay an additional $200,000.00 storage fee to relocate the Diesel Type II fuel to the west side of KMT.

    vii.  At the time the contract was executed, Tanglao and E.T. Oil represented that the Type II Diesel was ready for delivery at KMT.

    viii.  Immediately after the contract was executed, Tanglao and E.T. Oil claimed the Type II Diesel was being imminently shipped from Atlanta to KMT by Exxon Mobil.

    ix.  More than one month later, the fuel had still not arrived at KMT. Tanglao and E.T. Oil claimed the fuel would be shipped to KMT by a company named Portal Energy rather than Exon Mobil.

    x.  E.T. Oil and Tanglao misrepresented the associations and affiliations of parties to whom they introduced Plaintiff in order to gain Plaintiffs trust and convince Plaintiff to enter into the February 16, 2017 agreement.

140.    Tanglao and E.T. Oil knew that the representations made to Plaintiff were false at the time they were made them, or the representations were made recklessly and without regard for their truth.

141.    Tanglao and E.T. Oil intended for Plaintiff to rely upon their false representations.

142.    Plaintiff reasonably relied on the false representations of Tanglao and E.T. Oil.

143.    Plaintiff acted in reliance on the representations of Tanglao and E.T. Oil by entering into contract with E.T. Oil and Tanglao, wiring money to E.T. Oil, arranging for the resale, shipment and delivery of the Diesel Type II fuel.

144.    Defendant Tanglao and Defendant E.T. Oil never intended to deliver the fuel that it had contracted to deliver to the Plaintiff and intended to defraud Plaintiff.

145.    Tanglao and E.T. Oil made the false representations for the purpose of defrauding Plaintiff of its money. The conduct set forth in this Complaint is non exhaustive and is

intended to place the Defendants on notice of their wrongdoing.  It is anticipated that additional wrongful conduct will be uncovered in discovery.

146.    But for Defendants making the above-described promises and representations, Mr. Sapra and PBR would not have entered into the February 16, 2017 Agreement with E.T. Oil.

147.    As a result of the Plaintiff's reliance on the numerous false statements and misrepresentations made by defendants, Plaintiff has been damaged.

148.    Plaintiff is entitled to recover damages which were directly and proximately caused by the fraudulent acts of E.T. Oil and Tanglao, and to recover punitive damages in an amount to be determined at trial, but in no event less than $1,210,000.00, plus interest.

149.    Plaintiff is informed and believes and based thereon alleges that Defendants' fraudulent conduct as alleged hereinabove was done intentionally and/or with conscious and reckless disregard for Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against Defendants, and each of them, in an amount appropriate to punish or set an example of Defendants, and to deter them from engaging in similar such conduct in the future, the exact amount of said damages subject to proof at the time of trial.

## FOURTH CAUSE OF ACTION

### UNIFORM VOIDABLE TRANSACTIONS ACT/ UNIFORM FRAUDULENT CONVEYANCE ACT
### (against E.T. Oil)

150.    Plaintiff repeats, reiterates and re-alleges all prior paragraphs and allegations of this Complaint with the same force and effect as if set forth more fully herein.

151.     At all times since March 10, 2017, E.T. Oil and its owner Tanglao have been in debt to Plaintiff in the amount of $1,210,000.00.

152.     The debt resulted from E.T. Oil and its CEO, Tanglao refusing to deliver fuel purchased or to alternatively rE.T.urn Plaintiff's money tendered to purchase the fuel.

153.     The debt is covered by the Uniform Voidable Transactions Act, and the Uniform Fraudulent Conveyances Act.

154.     After the debt was incurred, E.T. Oil and/or its owner Tanglao made one or more transfers of property with the intent to hinder, delay, and/or defraud Plaintiff.

155.     One or more of the transfers were made to an insider.

156.     Tanglao retained possession or control of the property transferred in at least one of the voidable transfers.

157.     E.T. Oil and its CEO, Tanglao made attempts to conceal the transfer(s).

158.     Before E.T. Oil and Tanglao made one or more of the transfers, Plaintiff made attempts to obtain a return of the property from E.T. Oil and Tanglao.

159.     E.T. Oil and its CEO, Tanglao made attempts to remove or conceal assets.

160.     E.T. Oil and its CEO, Tanglao made one or more transfers without receiving consideration reasonably equivalent to the value of the property transferred.

161.     E.T. Oil and its CEO, Tanglao made each transfer within days of incurring its debt to Plaintiff.

162.     Before E.T. Oil and its CEO, Tanglao made one or more of the transfers, Plaintiff repeatedly demanded that Defendant E.T. Oil, and Tanglao return Plaintiff's property.

163.     Immediately after Defendants E.T. Oil and Tanglao became indebted to Plaintiff, the Defendants transferred property without obtaining a reasonably equivalent value in

exchange and in the process rendered Defendants remaining assets unreasonably small in relation to the debt owed and foreseen to Plaintiff.

164.     Defendants E.T. Oil and Tanglao made one or more transfers of property without receiving reasonably equivalent value in exchange for the transfer, and the Defendants intended to incur or believed, or reasonably should have believed that Defendants would not be able to pay their debt owed to Plaintiff following the transfer.

165.     The conduct set forth in this Complaint is non exhaustive and is intended to place the Defendants on notice of their wrongdoing.  It is anticipated that additional wrongful conduct will be uncovered in discovery.

166.     As a result of E.T. Oil and Tanglao's conduct, Plaintiff has been injured and has suffered damages.

167.     As a result of Defendants' conduct, Plaintiff is entitled to all relief available under the Uniform Voidable Transfer Act and/or the Uniform Fraudulent Conveyances Act including but not limited to a return of Plaintiff's property, injunctive relief preventing the further transfer of assets by Defendants, a pre-judgment attachment order or other provisional remedy, appointment of a receiver, and any other relief the Court deems the circumstances may require.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(against E.T. Oil, Tanglao)**

168.     Plaintiff repeats, reiterates and re-alleges all prior paragraphs and allegations of this Complaint with the same force and effect as if set forth more fully herein.

169.     Plaintiff, in good faith, wire transferred funds to Defendants Tanglao and E.T. Oil for purchase of fuel.

24

170.    Defendant E.T. Oil and its CEO, Tanglao received PBR's wire transfers, conferring a benefit on Defendants E.T. Oil and Tanglao.

171.    Plaintiffs wire transfers to E.T. Oil and Tanglao were made as consideration for the purchased fuel.

172.    The Defendants never delivered the purchased fuel and failed to provide a benefit to Plaintiff.

173.    E.T. Oil and Tanglao have unjustly retained Plaintiff's money.

174.    For several months, Tanglao and E.T. Oil told Plaintiff that delivery of the fuel would be imminent.

175.    For several months, Tanglao and E.T. Oil told Plaintiff that a return of Plaintiff's money would be imminent.

176.    Tanglao and E.T. Oil have continued to unjustly retain Plaintiff's money without conferring a benefit to Plaintiff.

177.    The transfer of funds to Defendant E.T. Oil was at the expense of Plaintiff.

178.    On information and belief, Defendant E.T. Oil and/or Tanglao have transferred the proceeds of Plaintiffs payments to other entities and have obtained further enrichment to the detriment of Plaintiff as a result.

179.    Plaintiff had a reasonable expectation at the time it wired money to Tanglao and E.T. Oil that delivery of the fuel would take place.

180.    Defendants have been unjustly enriched by failing to deliver fuel to Plaintiffs for the value of the funds received.

181.    Allowing Defendants Tanglao, and E.T. Oil to retain the benefits derived from their retention of the benefits conferred on them by Plaintiff PBR, without compensation, is inequitable, unjust, and has caused harm to Plaintiff.

182.    The conduct set forth in this Complaint is non exhaustive and is intended to place the Defendants on notice of their wrongdoing.  It is anticipated that additional wrongful conduct will be uncovered in discovery.

183.    E.T.Plaintiff is entitled to restitution in an amount not yet ascertainable, and to be determined at trial, but in no event less than $1,210,000.00, plus interest thereon.

### SIXTH CAUSE OF ACTION
### CONSPIRACY
### (against E.T. Oil, Tanglao, Hoats)

184.    Plaintiff repeats, reiterates and re-alleges all prior paragraphs and allegations of this Complaint with the same force and effect as if more fully set forth herein.

185.    E.T. Oil, Tanglao and Hoats pursued a common plan or design to commit a tort upon Plaintiff.

186.    E.T. Oil, Tanglao, and Hoats entered into an agreement to engage in wrongful conduct and/or to use unlawful means including false representations, promises, and intimidation to procure money from Plaintiff.

187.    E.T. Oil, Tanglao, and Hoats each cooperated and engaged in conduct to further the conspiracy, such as, but not limited to, making false introductions and preparing forged and fraudulent papers.

188.    E.T. Oil, Tanglao, and Hoats individually and collectively stood to profit from their common plan.

189.     E.T. Oil, Tanglao, and Hoats individually and collectively profited from their common plan.

190.     The conduct set forth in the Complaint is non exhaustive of the wrongful conduct engaged in by the Defendants and is intended to place the Defendants on notice of their wrongdoing.   It is anticipated that additional wrongful behavior and facts further evidencing the scope of the conspiracy will be uncovered in discovery.

191.     As a result of the conduct of the Defendants, Plaintiff has suffered injury and damages in an amount not yet fully ascertainable, but in no event less than $1,210,000.00, plus interest thereon.

192.     As a result of their conduct and common plan, Defendants E.T. Oil, Tanglao and Hoats are jointly and severally liable for the injury to Plaintiff.

**SEVENTH CAUSE OF ACTION**
**PIERCING THE CORPORATE VEIL**
**(against E.T. Oil and Tanglao)**

193.     Plaintiff repeats, reiterates and re-alleges all prior paragraphs and allegations of this Complaint with the same force and effect as if more fully set forth herein.

194.     Defendant Tanglao exercised complete control and domination of the finances, policy and business practices of E.T. Oil to such an extent that E.T. Oil had no separate mind, will or existence of its own.

195.     Corporate formalities were not observed by the president and executive of E.T. Oil.

196.     In his position as owner, president and chief executive officer, defendant Tanglao, treated E.T. Oil as his own bank account and he siphoned and diverted funds for his own benefit.

197.     Tanglao used his aforesaid control over E.T. Oil, to utilize E.T. Oil as a vehicle for perpetrating fraud. Tanglao seeks to utilize the corporate entity as a shield for personal liability to commit wrong doing and as such the corporate entity should be disregarded and E.T. Oil should be treated as one with Tanglao as the same person for purposes of liability.

**WHEREFORE,** Plaintiff PBR Sales, LLC demands judgment against Defendants as follows:

a.  The Defendants be required to compensate Plaintiff for out of pocket losses due to Defendants refusal to supply the agreed upon consideration, which is in the amount of no less than $1,210,000.00, plus interest thereon;

b.  The Defendants be required to pay punitive damages for the deplorable fraudulent conduct in an amount to be determined at trial;

c.  The Defendants be required to pay Plaintiff all prejudgment interest on the amount of $1,210,000.00;

d.  The Defendants be required to pay maximum statutory damages as determined applicable by this Court;

e.  The Defendants be required to Plaintiff all associated consequential damages incurred by Plaintiff on account of Defendants' conduct;

f.  The Defendants be required to compensate Plaintiff for all costs and expenses of all reasonable attorneys' fees and costs incurred on account of necessitating this action;

g.  The issuance of a pre-judgment attachment Order on assets of Defendants to mitigate the risk of additional transfer(s) or depletion of assets;

h.  Such other relief as the court deems just and equitable under the circumstances.

Dated:  July 5, 2017
     White Plains, NY

<div style="margin-left:40%">

LETTERA & MOSIELLO LLP

Stephen A. Florek III, Esq. "Of Counsel"
*Attorneys for Plaintiff*
2 Westchester Park Dr., Ste. 205
White Plains, New York 10604
P: 914-219-4128 ext. 701
F: 914-219-0948

</div>